# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:12-cr-00012-MR-DLH-3

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| ) | |
| KYLIE BROOKE RUMFELT, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court upon the Defendant's letter, which the Court construes as a motion to expunge her criminal record. [Doc. 75]. The government opposes the Defendant's motion. [Doc. 76].

## I. BACKGROUND

On February 8, 2012, the Defendant was charged along with two co-defendants in a Bill of Indictment with committing a Hobbs Act robbery (Count One), conspiring to commit a Hobbs Act robbery (Count Two), and aiding and abetting the discharge of a firearm during a Hobbs Act robbery (Count Three). [Doc. 1]. On August 23, 2012, the Defendant pleaded guilty to Count Two of the Indictment pursuant to a written plea agreement. The Defendant was sentenced on March 20, 2013, and received 12 months and

one day of imprisonment, plus a term of three years' supervised release. [Doc. 68]. On February 8, 2016, pursuant to the Defendant's motion [Doc. 72], the Court entered an Order terminating her term of supervised release before its natural expiration date. [Doc. 73].

The Defendant now returns to this Court, asking that her criminal conviction be expunged from her record. [Doc. 75]. The government opposes the Defendant's request. [Doc. 76].

## II. DISCUSSION

Before addressing the Defendant's reasons why she believes her record should be expunged, and the government's opposition thereto, the Court has the obligation to consider whether it possesses the jurisdiction even to entertain Defendant's request. "Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider. Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them." Bowles v. Russell, 551 U.S. 205, 212-13 (2007) (citations omitted). Put another way, the federal courts are courts of limited jurisdiction. They possess only that power the Constitution and the Congress provide. "It is to be presumed that a cause lies outside this limited jurisdiction … and the burden of establishing the contrary rests upon the party asserting

jurisdiction[.]" Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994) (internal citation omitted). In this matter, the Defendant wrote to the Court "in hopes that you will expunge my record and I can move forward with my life." [Doc. 75 at 1]. Nowhere in Defendant's filing does she address whether this Court possesses the jurisdiction that would enable it to do as she asks. This is not surprising given that Defendant is proceeding pro se and has no formal training in the law. Nevertheless, the Court must assess its jurisdiction.

Upon Defendant's indictment in this matter, the Court's jurisdiction was established pursuant to 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). The Court's jurisdiction over the Defendant, due to her alleged offense, continued until the Court entered its final Judgment establishing Defendant's conviction and sentence. The Court continued to exercise jurisdiction over the Defendant in order to enforce the terms and conditions of its Supervised Release Order governing the Defendant's behavior following her imprisonment.

As noted above, the Defendant completed her custodial sentence and thereafter began her term of supervised release. The Defendant's behavior following her imprisonment was admirable. She applied for the early release

from supervision and the Court granted the same. [Docs. 72 & 73]. Accordingly, the Defendant is fully discharged from any further responsibilities flowing from her criminal conviction. The upshot of all of this is that the Defendant, having fully and laudably satisfied every aspect of her sentence, is free of the government's clutches, at least as related to anything arising from her 2012 offense. Correspondingly, the Court no longer has jurisdiction over the Defendant pursuant to 18 U.S.C. § 3231. If the Court has the power to expunge the Defendant's record, such power must originate from some other source.

Congress has enacted legislation permitting courts to expunge certain indelicate information from qualifying persons' records in at least two narrow circumstances. See, e.g., 10 U.S.C. § 1565(e) ("The Secretary of Defense shall promptly expunge ... the DNA analysis of a person ... if the Secretary receives, for each conviction of the person of a qualifying offense, a certified copy of a final court order establishing that such conviction has been overturned."); 18 U.S.C. § 3607(c) (providing for the expungement of a defendant's record if such defendant successfully completed the specific pre-judgment probation procedure set forth in § 3607(a) and was under twenty-one years of age at the time of the offense).

There is, however, no statutory or constitutional grant of power to the federal courts to expunge a federal criminal *conviction* from a defendant's record solely on equitable grounds. In fact, that is a power is held by the Executive Branch of the government. The Constitution states that the "President ... shall have power to grant reprieves and pardons for offenses against the United States, except in cases of impeachment." U.S. Const. art II, § 2.

This does not end the analysis, as the government points out, because the question of the Court's so-called ancillary jurisdiction must be addressed. [Doc. 76 at 2]. Ancillary jurisdiction, as noted by the Supreme Court in Kokkonen, had been described loosely by that Court in prior decisions. Further, the Court noted it had previously described ancillary jurisdiction as both a vast doctrine as well as a constrained one. Not surprisingly then, there existed vague and competing articulations of the doctrine's contours. Kokkonen, 511 U.S. at 379 ("The doctrine of ancillary jurisdiction can hardly be criticized for being overly rigid or precise, but we think it does not stretch so far as [some of our precedent] suggests. The expansive language of Julian [v. Central Trust Co., 193 U.S. 93 (1904)] can be countered by (equally inaccurate) dicta in later cases that provide an excessively limited description of the doctrine." (citing Fulton Nat. Bank v. Hozier, 267 U.S. 276 (1925))). In

light of this, the Court in Kokkonen undertook to provide the proper description of the doctrine.

> Generally speaking, we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees[.]

Id. at 379-80 (citations omitted).

A decision of the Court of Appeals for the Fourth Circuit from more than thirty years ago implied that district courts possess ancillary jurisdiction to expunge records of lawful convictions based on equitable considerations.[1] Allen v. Webster, 742 F.2d 153, 154–155 (4th Cir. 1984). The Fourth Circuit in Allen reasoned that district courts enjoy "equitable discretion" to consider relief in the form of expungement. Id. at 155. The Court, however, never

---

[1] In the context of expungement, there is a significant difference between a lawful conviction and an unlawful one. For instance, if a conviction was procured in clear violation of the law there appears to be no dispute that federal courts enjoy ancillary jurisdiction to expunge such convictions. The same is true if there was no conviction obtained because the government dismissed the indictment. Sullivan v. Murphy, 478 F.2d 938 (D.C. Cir. 1973); United States v. McLeod, 385 F.2d 734 (5th Cir. 1967); United States v. McKnight, 33 F.Supp.3d 577 (D. Md. 2014); Wheeler v. Goodman, 306 F.Supp. 58 (W.D.N.C. 1969) (three-judge panel), overruled on other grounds, 401 U.S. 987 (1971). In the present case, however, these precedents are inapplicable because there is no dispute that the Defendant's conviction was lawfully and properly obtained, and she simply seeks expungement on equitable grounds.

6

addressed the district court's subject matter jurisdiction. More importantly, Allen was decided before Kokkonen and Fourth Circuit's reasoning cannot survive Supreme Court's underlying rationale in Kokkonen.[2]

As explained in Kokkonen, federal courts are permitted to invoke the doctrine of ancillary jurisdiction only in two limited circumstance: (1) where necessary to permit disposition by a single court of claims that are factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceeding, vindicate its authority, and effectuate its decrees. Neither of these circumstances are present here. Considering the first circumstance, the facts underlying Defendant's criminal conviction make very plain that she was an integral part of a violent criminal conspiracy. Defendant's crime was the armed robbery of a restaurant where one of her co-defendants actually fired a shot from his pistol in the direction of one of the victims present. [Doc. 58 at 4-5]. Additionally, the Defendant, as the get-away driver after the robbery, fled from the police at a high rate of speed, crossed the center line several times, and nearly crashed into a police cruiser

---

[2] After the Supreme Court's decision in Kokkonen, several district courts in this Circuit have held that they lack ancillary jurisdiction to expunge records on equitable grounds. United States v. Harris, 847 F.Supp.2d 828, 831–835 (D. Md. 2012); United States v. Mitchell, 683 F.Supp.2d 427, 430 (E.D. Va. 2010); Sambou v. United States, No. 5:99-cr-156-1, 2010 WL 3363034 (E.D.N.C. Aug. 24, 2010); Bethel v. United States, No. 5:98-cr-85-3, 2010 WL 3063231 (E.D.N.C. Aug. 3, 2010).

before surrendering. [Id. at 5]. Her actions in this regard carried with them the same potential for death or serious bodily injury as her co-defendant's warning shot. In contrast, the facts surrounding the Defendant's post-release behavior paint a completely different picture. According to one of the Defendant's personal references, "Kylie manages a business in Marion where she puts in 40 plus hours a week building this new business." [Doc. 75-1]. Further, the Defendant is expanding her employment potential by returning to school in an effort to become a Dental Hygienist. [Doc. 75]. While the Defendant's recent law-abiding behavior is worthy of praise, the Court is compelled to conclude that no factual interdependency exists between the claim over which the Court properly had jurisdiction, namely Defendant's criminal conviction, and her later ancillary claim to expungement relief.

Turning to Kokkonen's second circumstance, the expunction of the Defendant's lawful criminal conviction would not facilitate the functioning of this Court, that is, it will not help the Court manage its proceedings, vindicate its authority, or effectuate its decrees. The Court is mindful of the importance that complete and accessible evidence of a defendant's conviction remain a part of the public record. The Defendant's participation in a Hobbs Act robbery is no slight transgression of the law or some "little mistake." The

public is entitled to know who among them have violated the law and the seriousness of the crimes that were committed by such persons. More importantly, it is for the Congress, if it so chooses, affirmatively to grant federal courts jurisdiction to expunge criminal convictions for equitable reasons and to set forth the criteria by which the courts are to evaluate such claims. Barring such direction from Congress, different courts might adopt conflicting equitable standards leading to disparate results nationwide among similarly situated claimants. Without the power and the criteria to determine when correct criminal information may be removed from the public domain, the Court cannot expunge truthful and accurate information from an individual's criminal record. The Court concludes, therefore, that it lacks ancillary jurisdiction to expunge lawful convictions from criminal records based on equitable considerations. Therefore, the Defendant's request must be denied.

Even if pre-<u>Kokkonen</u> "equitable discretion" still existed to enable the Court to consider Defendant's request, the Defendant fares no better on the merits. The Court acknowledges that the Defendant has made exemplary rehabilitative progress and deserves recognition for the strides she has made thus far. Binding Circuit precedent, however, teaches that:

courts must be cognizant that the power to expunge is a narrow one, and should not be routinely used whenever a criminal prosecution ends in an acquittal, but should be reserved for the unusual or extreme case. Such extreme circumstances have been found and records ordered to be expunged where procedures of mass arrests rendered judicial determination of probable cause impossible, Sullivan v. Murphy, 156 U.S.App.D.C. 28, 478 F.2d 938 (1973); where the court determined the sole purpose of the arrests was to harass civil rights workers, United States v. McLeod, 385 F.2d 734 (5th Cir.1967); where the police misused the police records to the detriment of the defendant, Wheeler v. Goodman, 306 F.Supp. 58 (W.D.N.C. 1969); or where the arrest was proper but was based on a statute later declared unconstitutional, Kowall v. United States, 53 F.R.D. 211 (W.D.Mich. 1971).

Allen, 742 F.2d at 155 (citing with approval Schnitzer, 567 F.2d at 539-40) (other internal citation omitted). In Allen, the defendant was tried and acquitted in state court for offenses relating to the possession and manufacture of heroin. 742 F.2d at 154. Mr. Allen thereafter sought the federal district court's equitable powers to remove his arrest information, including fingerprint samples, that had been entered in the state and federal computerized criminal files. Id. In upholding the district court's denial of Mr. Allen's request, the Fourth Circuit observed:

> There is no assertion on Allen's behalf attacking the constitutional validity of the statutes under which Allen was tried. There was no assertion that in North Carolina a statute mandated destruction of an arrest record. There was no claim made of irregularity in the North Carolina proceedings. There was, indeed, not even a suggestion that the information on file was in any respect inaccurate. It was solely Allen's claim that the

10

> bringing of the information about his arrest, trial and acquittal before a prospective employer would have unjust adverse consequences.

Id. (footnotes omitted).

The Defendant's claim for expunction herein is even less compelling than Mr. Allen's claim. What the Defendant seeks to expunge from her criminal record is a lawful *conviction*, based upon her knowing and voluntary plea of guilty to a crime laden with violent potential, not some tangential information relating to her arrest on charges for which she was later acquitted. Further, the circumstances of the Defendant's case indicating that she was prosecuted appropriately and that her conviction rested upon a constitutionally sound statute, clearly do not present the "unusual or extreme" case borne out by the examples found in Allen. For these reasons, the Court concludes that the Defendant's petition for expungement does not come within the confined of "equitable discretion" as defined in Allen, even if the Court continues to harbor such authority after Kokkonen.

In closing, the Court commends Ms. Rumfelt for her excellent efforts toward rehabilitation since her conviction. Unfortunately they do not allow the Court to grant the expungement she has sought.

### III. CONCLUSION

For all of these reasons, the Defendant's request that her conviction in this case be expunged from her criminal record will be denied.

### ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's letter [Doc. 75], which the Court construes as a motion for expungement, is hereby **DENIED**.

**IT IS SO ORDERED.**

Signed: August 26, 2016

Martin Reidinger
United States District Judge